ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Fidelity & Deposit Company of Maryland | ) ASBCA No. 63056 |
| | ) |
| Under Contract No. W912ER-11-D-0010-0006 | ) |

APPEARANCES FOR THE APPELLANT:    Robert C. Niesley, Esq.
                                 Rebecca S. Glos, Esq.
                                   Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
                                   Irvine, CA

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                    Engineer Chief Trial Attorney
                                  Rebecca L. Bockmann, Esq.
                                  Michael E. Taccino, Esq.
                                    Engineer Trial Attorneys
                                    U.S. Army Engineer District, Middle East
                                    Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE SMITH ON GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

This appeal arises from the same task order contract, and presents the same legal issue, as Appeal No. 63052 which we recently dismissed for lack of jurisdiction. As with Appeal No. 63052, respondent (the government) moves to dismiss for lack of jurisdiction, saying that appellant, Fidelity and Deposit Company of Maryland (F&D), has no standing because F&D was not in privity with the government, and therefore was not a "contractor" per the Contract Disputes Act, when F&D's claim accrued between 2014 and early 2016. For similar reasons as in Appeal No. 63052, we agree with the government and dismiss the appeal.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

In 2013, the government contracted with ECC CENTCOM (ECC) under fixed-price task order Contract No. W912ER-11-D-0010-0006 (the Contract) for design and construction of U.S. Navy housing quarters in Bahrain (R4, tab 5). Between August 2014 and February 2015, the parties disagreed over whether the contract required ECC to install floor drains in guest room bathrooms (R4, tab 16, comment number 5758126, 1-0 to 5-0; tab 8). ECC installed the bathroom floor drains between January 14 and February 15, 2015 (R4, tab 14 at 46, 50, 54, 58, 62, 66, 70, 74, 78, 84, 104, 118, 136).

If not already clear from its earlier disagreements with the government, on February 23, 2015, after performing the work, ECC wrote that it was entitled to an equitable adjustment for installing the floor drains (R4, tab 8). On March 23, 2016, ECC submitted a request for equitable adjustment (REA) under the Contract's changes clause seeking $122,255 for the allegedly changed work (R4, tab 9).

Subsequent to ECC's REA, on April 19, 2016, the government terminated ECC for default (R4, tab 17). ECC's surety, F&D, arranged to complete the project and executed a takeover agreement with the government on July 19, 2016 (R4, tab 6). The takeover agreement provided:

> For purposes of completion of the Contract, except as may otherwise be provided in this Agreement, Surety is entitled to all rights, title, and interest of Principal in and to the Contract in all respects as if Surety were the original party to the Contract. Further, except as to the extent provided in this Agreement, the Government shall have all rights, obligations, and responsibilities under the Contract with respect to the Surety, to the same extent and effect as if Surety had executed the Contract initially instead of the Principal, as if the Principal's rights pursuant to the Contract terms had not been terminated.

(*Id.* ¶ 1) ECC was not a party to the takeover agreement. *Id.*

On August 30, 2016, the government requested additional information from ECC (not F&D or F&D's completion contractor, Vertex, though they were aware of the request) to consider ECC's March 23, 2016, REA (R4, tab10). ECC never responded. Instead, on November 17, 2016, seven months after ECC's REA and six months after ECC's termination, Vertex resubmitted ECC's REA *verbatim* (and without responding to the government's August 30, 2016 request), but Vertex withdrew the REA the same day (R4, tabs 11-12).

A year and a half later, on February 26, 2018, Vertex again resubmitted ECC's REA but with a lower total amount ($114,302.88 instead of $122,255.31) caused by deleting some costs to which the government had objected in its August 2016 response to ECC (R4, tab 13). On April 2, 2019, the government found "full merit" to Vertex's resubmission of ECC's REA, but the government never

issued a contract modification to implement the change (app. supp. R4, tab 22).

Another two years passed before March 24, 2021, when F&D submitted ECC's REA for "the additional Guest Bathroom Floor Drains" yet again, but this time as a certified claim (R4, tab 2). F&D's certified claim alleged the same contract change and sought the same costs as Vertex's 2018 REA and ECC's 2016 REA, but deleted one small cost item for a total claim of $113,170.88. *Id.* On September 21, 2021, the government declined to issue a contracting officer's final decision (COFD) because F&D was not the contractor (*i.e.* F&D did not have privity with the government) when the claim arose in 2014-2016 (R4, tab 3). F&D timely appealed to the Board on October 1, 2021 (R4, tab 1).

DECISION

It is the responsibility of F&D, as appellant, to establish the Board's jurisdiction. *Hellenic Air Force*, ASBCA No. 60802, 17-1 BCA ¶ 36,821 at 179,457. Standing to bring an appeal before the Board is founded upon privity of contract with the government. *See Peerless Ins. Co.*, ASBCA No. 28887, 88-2 BCA ¶ 20,730 at 104,738. Moreover, the scope of the Board's jurisdiction is determined by the contents of the claim submitted to the contracting officer. *IBM Corp.*, ASBCA No. 60332, 18-1 BCA¶ 37,002 at 180,190. "The facts supporting jurisdiction are subject to our fact-finding upon a review of the record." *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816.

Regardless of the small differences in total claimed costs between the three previously submitted REAs (first from ECC then two from Vertex) and F&D's certified claim, the basis of the alleged change has always been the government's 2014 orders for ECC to install guest bathroom floor drains, ECC's installation of those drains in early 2015, and costs set forth in ECC's March 23, 2016, REA which have been adjusted marginally *downward* since then. The alleged changes to the contract, and performance of the changed work, occurred when ECC was the contractor, before ECC's termination, before F&D's takeover agreement with the government, before Vertex performed any work, and before F&D incurred any costs to complete the contract or to pay subcontractor invoices. It is and always has been ECC's claim, even when Vertex and F&D tried to rebrand it as their own.

F&D points to the language in the takeover agreement (app. opp'n at 7), which provides that F&D is entitled to rights and interest of ECC "as if Surety were the original party to the Contract . . . [and] had executed the Contract initially instead of [ECC]" (R4, tab 6 ¶ 1). However, without participation of the original contractor (and, as found above, ECC was *not* a party to the takeover agreement), a takeover agreement cannot assign the original contractor's claims to a surety to confer standing under the Contract Disputes Act. *United Pac. Ins. Co.*, ASBCA No. 52419,

3

01-1 BCA ¶ 31,296 at 154,509.  This is a critical difference with *Safeco Ins. Co. of America*, ASBCA No. 52107, 03-2 BCA ¶ 32,341, relied on by F&D, where the terminated contractor and the surety executed an explicit assignment of claims.

Because F&D was not yet in privity with the government when the claim arose and matured (no later than ECC's REA of March 23, 2016), F&D has no standing to assert ECC's claim and the Board does not possess jurisdiction to entertain F&D's appeal of the government's denial of F&D's attempt to assert ECC's claim.  *See United Pac.*, 01-1 BCA ¶ 31,296 at 154,507.

F&D also relies upon conflicting, unsupported and ultimately self-defeating factual assertions.  First, and contrary to its position that F&D is entitled to pursue ECC's claim under the takeover agreement, F&D suggests this is really F&D's own claim because, after the takeover agreement, F&D "*performed* and paid for *all* of the [f]loor [d]rain [w]ork that is the subject of this claim."  (App. opp'n at 1 (emphasis added); *et. sec.*))  This assertion is facially untrue, as demonstrated by ample evidence that the added work was performed in 2015 while ECC was in privity with the government (R4, tabs 8-9, 14 at 46, 50, 54, 58, 62, 66, 70, 74, 78, 84, 104, 118, 136).

F&D also asserts that it "completed" the work, appearing to concede the plain fact that it did not perform "all" of the work (app. opp'n at 2, 6).  But then F&D acknowledges that, for a claim to accrue, the contractor must have actually "begun" performance and incurred some extra costs (*id*. at 2) which ECC, not F&D, demonstrably did.

Moreover, F&D fails to cite documents in the record that support its factual assertions,[1] and the sum of its unsupported allegations implicitly concede that the claim accrued when ECC had privity anyway.[2]

---

[1] F&D cites only a recent March, 21, 2022 declaration of Mr. Ferguson, its "senior claims representative," that admits that work was done "prior to ECC's termination" (Ferguson decl. at 1) supported by a pre-termination pay application from a subcontractor to ECC (app. supp. R4, tab 21).  But Mr. Ferguson also asserts that ECC's subcontractor billed F&D for "other work performed after the takeover agreement."  (Ferguson decl. at 1-2).  The declaration does not describe the alleged post-takeover work beyond the word "work," nor the amounts paid by F&D.  And F&D has not included in the record four post-takeover pay applications that would purportedly support these allegations.

[2] F&D's certified claim was sketchy, at best.  It stated that "F&D through Vertex" had the design dispute with the government (R4, tab 2 at 2) when the record is clear that the dispute occurred in 2014, almost two years before F&D or Vertex were

Although not detailed or supported by evidence or caselaw in any persuasive way, F&D also appears to argue that the cost of the floor drain work was actually "paid" by F&D, apparently through a chain that begins with ECC's subcontractor and ends with F&D and that it thus had the right to present the claim (app. opp'n at 7, 8). F&D even asserts that "100% of the damages sought in the claim for the Floor Drain Work were incurred solely by F&D" (*id*. at 3). But the record shows that the floor drains were ordered by the government in 2014 and installed in January and February 2015 and it is the costs for that work that has been pursued (first by ECC in its 2016 REA) ever since. The trail of any payments or reimbursements between ECC, ECC's subcontractor, Vertex, F&D, and anyone else, are not relevant to our determination of which contractor was in privity with the government when the claim against the government accrued.[3]

Finally, even if, despite the lack of supporting evidence, some of the floor drain work was "completed" by F&D after the takeover agreement, F&D would only be entitled to assert its own claim for the cost to complete the work and would still not be entitled to claim the cost of the work that was performed while ECC was in privity with the government. Of course, ECC's original REA of $122,255.00 (and Vertex's 2018 REA for $114,302.88) are *higher* than F&D's total claim of $113,170.88 which is based on essentially the same pre-takeover costs (R4, tab 2 at 63-79; tabs 6, 11, 13). So, even if F&D could show some post-takeover work, there is no evidence of *any* cost of that work.

In sum, none of F&D's contradictory arguments provide a basis for finding jurisdiction. Some effectively concede that the claim accrued prior to the takeover agreement, while the remainder are premised on unsupported allegations and arguments that have no weight in our jurisdictional fact finding. The contract dispute, therefore the claim, accrued no later than the March 23, 2016, REA when

---

in privity with the government. F&D's certified claim also did not describe when the work was performed, or mention ECC's 2016 REA at all -- despite using some of the exact same supporting cost documents (*id*. at 72-79; R4, tab 9 at 13-19). The damages discussion in F&D's certified claim recognized that it was a resubmission of Vertex's 2018 REA (R4, tab 2 at 3) which, as discussed above, was a resubmission of ECC's 2016 REA. And the dates on the supporting cost documents were all prior to ECC's 2016 REA (*id.* at 63-79).

[3] "Accrual of a claim means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." Federal Acquisition Regulation (FAR). FAR 33.201.

ECC, not F&D or Vertex, had privity of contract with the government.

For these reasons, the government's motion to dismiss is granted, and the appeal is dismissed for lack of jurisdiction. Because our decision is dispositive, it is not necessary to address the parties' arguments on other issues.

<u>CONCLUSION</u>

The government's motion to dismiss is granted, and the appeal is dismissed for lack of jurisdiction.

Dated: June 21, 2022

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63056, Appeal of Fidelity & Deposit Company of Maryland, rendered in conformance with the Board's Charter.

Dated:  June 21, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals